*The inhabitants of* TURNER *vs. The inhabitants of* BRUNSWICK.

The provision of *Stat.* 1821, *ch.* 122. *sec.* 17, that if a pauper notice be not answered within two months, the defendant town shall be barred from contesting the question of settlement, does not apply to cases where the settlement can be shewn to be in the town giving the notice.

THIS was *assumpsit* for the support of one *Joseph House* and his family, who were paupers ; and it was tried before *Preble J.* upon the general issue.

The plaintiffs proved that notice, in due form of law, was sent from the overseers of the poor in *Turner* to those in *Brunswick, May* 18, 1824 ; and again *October* 1, 1824 ; and relied on the fact that no

answer was returned within two months, as estopping the defendants from contesting the question of settlement, by virtue of the provision in *Stat.* 1821, *ch.* 122. *sec.* 17.

The defendants offered to prove that the legal settlement of the paupers was in *Turner* ;—that in *May* 1821, a regular notice that they were chargeable was sent from *Turner* to *Brunswick ;* to which the latter town replied within two months, denying the alleged settlement in *Brunswick ;* and that *Turner* had not called on *Brunswick* at any time within two years after *May* 1821. This evidence the Judge rejected, as not admissible until a seasonable answer was shewn to have been given to the notices proved by the plaintiffs.

The defendants then proved that an answer, denying the settlement of the paupers to be in *Brunswick,* was put into the mail *May* 22, 1824, properly addressed to the overseers of the poor in *Turner,* but the postage was not paid ;—that it arrived seasonably at the post office in *Turner,* and its being there was mentioned to one of the overseers, who declined taking it from the office, but thought it might be an answer to a notice they had sent to *Brunswick ;*—that this was not mentioned to any other overseer ; and the letter was finally sent to the general post office as a dead letter ;—and that another letter not post paid, addressed to the same overseers, was advertised as a dead letter *Jan.* 1, 1825, but from what town it came was not recollected.

This evidence the Judge ruled to be insufficient to prove an answer to either of the notices sent ; and directed a verdict for the plaintiffs ; to which the defendants excepted.

*Fessenden,* in support of the exceptions contended that the statute estoppel did not attach, where the settlement of the pauper was in the town giving the notice. The statute has prescribed the modes of gaining a settlement, among which that by estoppel is not to be found. But upon the ground taken by the plaintiffs, a new mode of gaining a settlement is created, by estoppel.

By a reasonable construction of the statute, no town has a right to call on another town to support its own poor. The call in such case may be treated as a nullity. The third section makes it the

duty of all towns to support the poor persons " lawfully settled therein," as well as those falling there into distress, but having their settlement in some other town.    The fifteenth section provides for their removal *to* the place of their settlement, not *from* it.

Further, the pauper who is the subject of litigation, is never made a party to the suit, nor permitted to be heard.    And ought his domicil to be made dependent on the negligence of other persons, and himself exposed to a forcible removal from his home ?    Nor is this the only abuse growing out of the opposite doctrine.    It offers inducements to send notices to many towns at once, in the hope to entrap some one by a neglect to answer ; and thus directly encourages fraud.    On these grounds the meaning of the legislature must have been merely to preclude the defendants from shewing the settlement to be in a third town ; but in no case to debar them from contending that the burthen belonged exclusively to the plaintiffs. *Leicester v. Rehoboth* 4. *Mass.* 180.    *Bridgewater v. Dartmouth ib.* 273.    *Westminster v. Barnardston* 8. *Mass.* 104.    *Greene v. Monmouth* 7. *Mass.* 467.    *Needham v. Newton* 12. *Mass.* 452.    *Topsham v. Harpswell* 1. *Mass.* 518.    *Freeport v. Edgecomb ib.* 459. *Quincy v. Braintree* 5. *Mass.* 86.

He further insisted that the answer to the notice of 1821, was sufficient for all purposes.    No new reply was necessary, the defendants having once for all denied that the settlement of the paupers was in their town.    *Newton v. Randolph* 16. *Mass.* 426.

*Greenleaf* and *W. K. Porter*, for the plaintiffs, relied on the language of the statute, as creating a peremptory bar.    It provides that if the notice is not seasonably answered, the defendants " shall be barred from contesting the question of settlement with the plaintiffs in such action."    It regards the silence of the party as conclusive evidence of the charge.    *Westminster v. Barnardston* 8. *Mass.* 107. *Bridgewater v. Dartmouth* 4. *Mass.* 273.    And with good reason ; for the plaintiff town, in consequence of such silence, may have lost its remedy against another town by neglecting to give notice.    On the same principle the neglect to reply has been held to preclude any inquiry whether the person relieved was in fact a pauper.

*Freeport v. Edgecomb* 1. *Mass.* 463. It fixes, as between these parties, both the question of settlement, and of pauperism.

The suit here is between corporations; and they, as such, can have no knowledge of any facts whatever. Even their officers may not be able to ascertain the settlement of paupers they are called on to support, especially when derived from remote ancestors, &c. If knowing the facts, they fraudulently give notice to a town where the pauper has no settlement, the remedy is plain against them personally, for the damages thus occasioned.

As to the notice of 1821, it had done its office. A new notice was necessary to recover for new expenses. *Green v. Taunton* 1. *Greenl.* 228. *Topsham v. Harpswell* 1. *Mass.* 518.

MELLEN C. J. at the ensuing term in *Kennebec,* delivered the opinion of the Court as follows.

The general question in this case is, whether the defendants are estopped to deny that the settlement of the paupers is in *Brunswick,* by reason of their omission to give a seasonable answer to the notice which was given to them by the plaintiffs in *October* 1824. In the discussion of the cause this general question has been divided. 1. It has been urged on behalf of the defendants that as they returned a seasonable reply to the notice given them by the plaintiffs in *May* 1821, and therein denied that the pauper's settlement was in *Brunswick,* that answer was, in its nature, a continuing protection to *Brunswick* against an estoppel by reason of their omitting to send an answer to the notice of *October* 1824. 2. If not, then it is contended that, on the facts stated in the report, the statute estoppel cannot operate against the defendants, although they did not return any answer to the notice last mentioned. The former of these questions has not been expressly decided in Massachusetts or this State; and the latter appears to be perfectly new. We have not found it necessary particularly to examine the alleged legal effect of the answer to the notice of 1821, because our opinion is founded upon the construction of those parts of the act of 1821. *ch.* 122. which give the right to one town to send notice to another, and prescribe the mode and con-

Turner *v.* Brunswick.

sequences of such notice. We have listened with attention to the able argument of the defendant's counsel, on this branch of the defence, and are all satisfied that it is sound and unanswerable. It is a well known maxim, as has been observed, that estoppels are not to be favored. It is not our duty to apply them except in those cases where they are clearly applicable. On the trial, proof was offered on the part of the defendants to shew that for the last fifteen years, the paupers have all dwelt and had their home in *Turner ;* and had their legal settlement fixed in that town by the said act of 1821. This evidence the presiding judge excluded. But, in deciding the cause, we must consider these facts as though proved ; and then the single question is presented, " has the town in which a pauper, or person supplied, has his legal settlement, a right to the benefits of the statute estoppel, in case the town to which notice is given, omits to return an answer within two months ?" A careful examination of several of the provisions of the above mentioned act will lead to a satisfactory solution. We have examined the several cases cited by the defendant's counsel, and find that in none of them was there any pretence that the person to whom the supplies had been furnished, had, at the time, his settlement in the plaintiff town.

It is provided in the eleventh section of our statute before mentioned, " that it shall be the duty of said overseers, in their respective towns, to provide for the immediate comfort and relief of all persons residing or found therein, not belonging thereto, but having lawful settlements in other towns, when they shall fall into distress," &c. It is also provided in the same section that expenses so incurred may be recovered by action or complaint. The fifteenth section among other things, provides " that all persons actually chargeable or who through age or infirmity, idleness or dissoluteness, are likely to become chargeable to the place wherein they are found, but in which they have no lawful settlement, may be removed to the places of their lawful settlement if they have any in the State." The section then prescribes the form of proceeding to accomplish the object, by application to a justice of the peace. The sixteenth section provides for effecting the same object by application to the Court of Common Pleas, and directs what measures shall be pursued. The

seventeenth section is the important one, and that which has an immediate bearing upon the question we are now considering. Among other things it provides " that said overseers may in all cases, if they judge it expedient, previous to any such application to any justice of the peace, or of the Circuit Court of Common Pleas, to send a written notification, stating the facts relating to any person actually become chargeable to their town, to one or more of the overseers of the place where his settlement is supposed to be," requesting a removal, &c. And if such removal is not effected or objected to by them, in writing, within two months, such overseers may remove him to the town notified; which town shall be liable for the expenses of his support and removal, " to be recovered by action as aforesaid by the town incurring the same; and shall be barred from contesting the question of settlement with the plaintiffs in such an action." The eighteenth section provides " that said overseers shall relieve and support, and, in case of their decease, decently bury all poor persons residing or found in their towns, having no lawful settlement within this State, when they stand in need," and authorises a recovery, in certain cases, of their relations. From this view of the statute it will be seen that the seventeenth section has an immediate relation to the eleventh, fifteenth, and sixteenth sections; and those three all relate to expenses incurred by, or to removals from, towns, in which the pauper or person furnished with supplies, had not his legal settlement; then follows the seventeenth section, providing for notice previous to the commencement of an action, and declaring that the omission to return a seasonable answer shall be an estoppel on the town notified, to contest the question of settlement with the plaintiff town. In no part of the act can we find any intimation that a town in which a pauper has his legal settlement, can by any mode, except a judgment of court, avail themselves of the benefits of the statute estoppel. The possession of such a power, might become mischievous in its abuse; besides, it would operate to change the settlement of the pauper, in a manner not contemplated in any part of the second section. For instance, let us suppose that a pauper has his legal settlement in A., but that the overseers of that town, notwithstanding, send

Turner *v.* Brunswick.

notice to the overseers of B. that the pauper has his legal settlement in their town ; and by some inattention or accident, no answer is returned by the overseers of B. to the overseers of A. within two months. Now if, in such a case as this, the statute estoppel is applied, the paupers settlement is changed from A. to B. ; because B. cannot contest the question of settlement with A., the plaintiff town ; of course a judgment is rendered against B., and this judgment becomes a complete bar to any further disturbance or agitation of the question between those towns. This is an effect never contemplated by the statute ; and the language of the seventeenth section shews it ; for it only provides that the town, omitting to return a seasonable answer, shall be barred from contesting the question of settlement with the plaintiffs ; but it does not profess to touch the question of settlement ; much less to change it. It only throws upon the defendant town the burthen of seeking for the town where the pauper has his legal settlement ; and obtaining a reimbursement from such town ; and this is the penalty the negligent town is compelled to pay in consequence of its negligence. The eighteenth section above mentioned contains the same idea as the others, respecting the settlement of the pauper ; proceeding on the principle that his legal settlement is not in the town furnishing relief. Viewing the several provisions of the act which we have been considering, in the light in which we have placed them, the whole appears rational, just and consistent ; calculated to insure comfort and relief to the destitute and suffering ; to stimulate towns to their duty and their interest ; but at the same time to guard their rights secure from any eventual injury. On the whole we are all of opinion that the defendants should have been permitted to prove that the paupers had their legal settlement in *Turner* at the time the notices were given to the overseers of *Brunswick ;* and accordingly there must be a new trial.

*Verdict set aside, and a new trial granted.*